**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHELLE OSIE,

Plaintiff,

v.

MEYER TOOL, INCORPORATED,

Defendant.

Case No. 1:21-CV-484

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Michelle Osie, (Doc. 106), and Defendant Meyer Tool, Incorporated, (Doc. 110). Also before the Court are motions to strike filed by both parties, (Docs. 90, 117), and a motion for discovery-related costs and fees filed by Osie, (Doc. 128). For the following reasons, the Court will deny both motions for summary judgment, grant Osie's motion to strike, deny Meyer Tool's motion to strike, and grant Osie's motion for discovery-related costs and fees.

## I. BACKGROUND

Meyer Tool is a privately held, Cincinnati-based company that specializes in "supplying a variety of precision components to the aerospace and gas turbine engine industries." (Doc. 110, PageID 7053). In October 2011, Osie was hired at Meyer Tool to operate a conventional electrical discharging machining tool ("EDM").[1] (*Id.*, PageID

[1] Osie was initially hired to work in Meyer Tool's shipping and receiving department in December 2004. (Doc. 107, PageID 6832). But approximately one year later, Meyer Tool terminated Osie's

7055). Her direct supervisor was Edwin "Huck" Finn and the night shift lead was Mike Haggard. (Doc. 107, PageID 6832).

During the course of her employment, Osie also worked on a part marking machine. That job entailed reviewing an operations sheet, correctly orienting an aircraft part in a machine, coding the correct serial number, and marking the part. (*Id.*, PageID 6838; Doc. 110, PageID 7055). According to Meyer Tool, "[o]nce the part was marked according to specifications, Plaintiff would sign her employee number on a 'traveler' indicating the part was conforming and ready for the next operation." (Doc. 110, PageID 7055). "Travelers also have sections to mark the aircraft part as nonconforming if the operation resulted in a deviation from the operations sheet specifications." (*Id.*).

Due to complications from osteoarthritis in her left knee, Osie filed for leave under the Family and Medical Leave Act ("FMLA") in June 2015 and April 2019. (Doc. 1, PageID 4). Following physical therapy, steroid injections, and a knee brace, Osie continued to experience health issues and her physician ordered an MRI. In June 2019, Osie was diagnosed with chondromalacia of her left patella. As a result, her physician restricted her to working eight-hour shifts (unless she had a chair and could remain seated during her shift, in which case she was permitted to work for longer periods) and eventually concluded that a total knee replacement would be required to restore normal functionality. (*Id.*, PageID 4-5).

---

employment because she did not possess a high school degree or equivalency. (*Id.*; Doc. 110, PageID 7055). That period of employment is not directly at issue here.

Osie reapplied for FMLA leave on August 2, 2019, and Meyer Tool approved the request. But the next week, Meyer Tool discharged Osie, noting "Substandard Work/Work Quality" in the termination notice. (Doc. 105, PageID 6771). Osie contends that Meyer Tool's stated reason is pretextual, and that she was instead retaliated against for taking FMLA leave and targeted due to her association with other employees who had filed EEOC claims, NLRB complaints, and civil lawsuits against Meyer Tool. (Doc. 107, PageID 6870-71).

According to Osie, the workplace was fraught. She alleges that Finn harassed and unfairly targeted female and black workers and at one point even ripped up her FMLA paperwork, requiring it to be faxed to HR. (*Id.*, PageID 6856). Osie further describes an environment of HR mismanagement and selective discipline, particularly from 2016-2019: that safety-glasses and cell phone rules were inconsistently enforced and largely left to a supervisor's discretion; that other machinists commonly used phones and ate at their machines without discipline; and that outright termination for deviating or nonconforming parts was rare and handled on a case-by-case basis. (*See* Doc. 119, PageID 7304-07). She also alleges that Meyer Tool systematically pays its female machinists less than its male machinists, and claims that she was unfairly singled out for discipline by Finn, who harassed and demeaned female and black workers in particular. (Doc. 107, PageID 6853-55).

Osie filed a charge of discrimination with the EEOC on May 18, 2020, claiming retaliation and discrimination based upon sex and disability status. (Doc. 105, PageID 6808). The EEOC issued a right-to-sue letter, and Osie filed suit on July 20,

2021, bringing ten causes of action: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; (2) gender discrimination in violation of the Ohio Civil Rights Act ("OCRA"), Ohio Rev. Code § 4112.01, et seq.; (3) discrimination in violation of the Americans with Disabilities Act of 1990; (4) disability discrimination in violation of the OCRA; (5) gender-based pay discrimination in violation of the federal Equal Pay Act, 29 U.S.C. § 206(d)(1); (6) wrongful termination in violation of public policy; (7) gender-based pay discrimination in violation of the Ohio Equal Pay Act, Ohio Rev. Code § 4111.17; (8) wrongful termination and interference with legal rights under FMLA; (9) negligent retention and supervision; and (10) retaliation in violation of Title VII. (Doc. 1).

The ensuing motion practice and discovery process was extremely protracted, requiring on numerous occasions the Court's intervention in what should have been routine matters. Following a motion for judgment on the pleadings, the Court dismissed Count 6 (wrongful termination in violation of public policy) on September 27, 2022. (Doc. 24). Ultimately, both parties moved for summary judgment on the remaining claims in April 2024, and briefing concluded on all outstanding motions in June 2025.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the

outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This standard of review remains the same for reviewing cross-motions for summary judgment. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441-42 (6th Cir. 2021); *see Harris v. City of Saginaw*, 62 F.4th 1028, 1032-33 (6th Cir. 2023) ("In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*;" whereas "in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.").

## III. ANALYSIS

### a. Exhaustion and Timeliness

As a threshold matter, Meyer Tool contends that Osie failed to timely exhaust her administrative remedies before the EEOC, and is therefore barred from asserting her Title VII or ADA claims stemming from the period prior to July 19, 2019. (Doc. 110, PageID 7065).

Prior to filing suit under Title VII or the ADA, a plaintiff generally must present her claim to the EEOC. 42 U.S.C. § 2000e-5(e)(1). A claim is exhausted if it was stated in the charge or could reasonably be expected to grow out of the EEOC's investigation. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010). Because Ohio is a "deferral" state, Osie had 300 days after a discrete unlawful employment practice to file her charge. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). She filed on May 18, 2020. Thus, although discrete acts before July 23, 2019 (not July 19, 2019, as Meyer Tool calculates) are untimely, such acts may nevertheless serve as "background evidence in support of a timely claim." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002).

Osie's EEOC charge checked the boxes for sex, disability, and retaliation; identified June 21 through August 7, 2019, as the relevant period; asserted that male machinists received more favorable working conditions and wages; alleged that disability-related absences were used to justify termination; and expressly identified her discharge. (Doc. 105, PageID 6808-10). Liberally construed, the charge gave Meyer Tool and the EEOC notice of sex- and disability-based termination and retaliation claims. It also alleged that Finn targeted Osie after she complained about him. An investigation of that allegation and the stated reasons for Finn's treatment of Osie could reasonably be expected to examine his reaction to Osie's close relationships with employees who had pursued protected complaints against Meyer Tool. Count 10 therefore is not barred for failure to exhaust. Discrete acts before July 23, 2019, are considered only as background unless independently timely.

Meyer Tool also relies heavily on *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 U.S. App. LEXIS 14469 (6th Cir. June 8, 2023), which affirmed judgment against another former Meyer Tool machinist represented by Osie's counsel. That decision is persuasive where it applies the same legal standards to similar evidence, but it does not outright preclude Osie's claims. Osie was not a party to *Santiago*, and Meyer Tool has not established privity or another recognized exception to the rule against nonparty preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008). The Court therefore decides Osie's claims on the record.

**b. Motions to Strike**

Osie moves under Federal Rules of Civil Procedure 26 and 37 to strike Nancy Condon from Meyer Tool's trial-witness list. (Doc. 90). Under Rule 26, Meyer Tool was required to identify persons likely to have discoverable information and to supplement that disclosure in a timely manner. Fed. R. Civ. P. 26(a)(1)(A)(i), (e)(1)(A). Unless a failure to do so was substantially justified or harmless, an undisclosed witness may not be used at trial. Fed. R. Civ. P. 37(c)(1). In deciding harmlessness, the Court considers surprise, the ability to cure the nondisclosure, disruption of trial, the evidence's importance, and the nondisclosing party's explanation. *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015).

Meyer Tool first identified Condon—a Meyer Tool employee and Osie's former coworker—on a witness list served November 15, 2024, one week after the November 8 discovery deadline. (Doc. 90, PageID 6394-96, 6399). The record reflects no earlier disclosure, either by way of a discovery response identifying Condon or other notice

of her relevant knowledge. Meyer Tool offers no substantial justification for waiting until discovery had closed. Because discovery proceeded without notice that Condon possessed relevant information, curing the surprise would require reopening discovery and imposing avoidable expense. The absence of a trial date does not render that prejudice harmless. On balance, therefore, exclusion is appropriate.

In turn, Meyer Tool moves to strike the affidavits of Chazerrique Broach and Gary Khin, which Osie submitted in support of her motion for summary judgment. (Doc. 117). Rule 56 does not require a separate motion to strike summary judgment evidence. A party may instead object that cited material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). An affidavit used at summary judgment must be based on personal knowledge, state facts that would be admissible, and show the affiant's competence to testify. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the Court considers admissible portions of the affidavits and disregards statements founded on hearsay, speculation, legal conclusions, or matters outside the affiant's personal knowledge. *See Ondo v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015).

Meyer Tool also invokes the sham-affidavit rule, but the chronology does not support wholesale exclusion. Broach and Khin signed their affidavits in March 2023, before their April and June 2023 depositions. The rule ordinarily addresses an affidavit prepared *after* deposition testimony to manufacture a factual dispute. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906-08 (6th Cir. 2006). Any actual inconsistency between the earlier affidavits and the later depositions bears on

whether a particular assertion can create a genuine dispute of fact; it does not justify striking both affidavits in their entirety.

Nor does Rule 37(c)(1) require exclusion. Relevant considerations include surprise, the ability to cure it, disruption of trial, the evidence's importance, and the nondisclosing party's explanation. *Howe*, 801 F.3d at 747-48. Osie identified Broach and Khin and described the subjects of their anticipated testimony in a supplemental disclosure filed March 30, 2023. Meyer Tool then deposed both witnesses while discovery remained open and has not shown unfair surprise. On this record, exclusion would be disproportionate.

**c. Title VII Gender Discrimination (Count 1)**

Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from taking an averse employment action against an individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A Title VII discrimination claim must be proven either through "direct evidence of discrimination or . . . circumstantial evidence that would allow an inference of discriminatory intent." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* at 865. Where, as here, a plaintiff presents only circumstantial evidence of retaliation, the Court employs the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Johnson*, 319 F.3d at 865-66.

Under the *McDonnell Douglas* framework, a plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)). "The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions, supported by admissible evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.*

Finally, "[t]he burden then 'shifts back to the plaintiff to show pretext'—meaning 'that the employer's explanation was fabricated to conceal an illegal motive.'" *Brown v. FCA US LLC*, No. 25-1405, 2025 U.S. App. LEXIS 33120, at *9-10 (6th Cir. Dec. 17, 2025) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "This resulting burden is one of persuasion, and this burden (as to pretext) at this stage 'merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination.'" *Jordan v. Matthews Nissan, Inc.*, 539 F.Supp.3d 848, 865 (M.D. Tenn. 2021) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him." *Id.* at 866.

Osie argues on summary judgment that she "is female, was terminated, was qualified for her position, was replaced by a male and was treated less favorably than male comparators." (Doc. 107, PageID 6860). She offers evidence that Meyer Tool replaced her with male machinist Ratan Rai and exhibited more favorable treatment to male machinists with repeated infractions related to nonconforming parts. For its part, Meyer Tool disputes that Rai was a replacement and maintains that the proposed comparators differed in duties, infractions, discipline, cost, and customer impact. Meyer Tool instead says that it discharged Osie for substandard work and repeated violations of its quality procedures, and offers that its workplace handbook warned that poor performance could lead to termination.

The record documents a 2016 incident involving fifty incorrectly marked parts, a 2018 incident in which Osie assigned the same serial number to two parts, a January 2019 incident involving two parts marked on the wrong side, and a duplicate-serial-number error discovered in July 2019. Osie acknowledges that she signed the traveler for the two parts involved in the final incident and that the parts did not conform to the operations sheet. (Doc. 41, PageID 1793-96). HR Director Deanna Adams reviewed the incident and Osie's disciplinary history with company president Doug Lang before Meyer Tool discharged Osie for "Substandard Work/Work Quality." (Doc. 39, PageID 1575-76; Doc. 42, PageID 2092; Doc. 105, PageID 6723).

Because violation of quality and workplace policies is a legitimate, nondiscriminatory reason for discharge, *see Santiago*, 2013 U.S. App. LEXIS 14469,

at *11-12, Osie must produce evidence from which a jury could reasonably reject Meyer Tool's explanation and infer that sex discrimination was the actual reason for the termination of her employment. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). She may do so by showing that the proffered reason had no basis in fact, did not actually motivate the decision, or was insufficient to motivate it. *Id.* But the Court does not sit as a "'super personnel department,' overseeing and second guessing employers' business decisions." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006) (quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983)).

That evidence in the record precludes summary judgment for Osie here. The undisputed existence of a signed traveler, a duplicate-number error, and earlier corrective actions permits a jury to credit Meyer Tool's explanation and reject discriminatory motive. But neither is Meyer Tool is entitled to summary judgment. Osie disputes who caused the final error, its seriousness, and the reliability of Meyer Tool's investigation. She points to evidence that the duplicate was discovered nearly two years after the marking operation; multiple employees handled or inspected the parts; the parts could be reworked; and Meyer Tool did not complete the usual root-cause corrective-action documentation or retraining for the event. (Doc. 107, PageID 6840-47; Doc. 120, PageID 7320-23). The signed traveler is probative, but it does not conclusively resolve responsibility or establish whether Meyer Tool honestly relied on a particularized investigation. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285-86 (6th Cir. 2012).

The comparator evidence is likewise disputed, rather than absent. Osie identifies male machinists who allegedly accumulated more nonconforming or scrapped parts without discharge, and she offers testimony from Broach and Khin regarding inconsistent discipline and shop practices. (Doc. 107, PageID 6838-46; Doc. 119, PageID 7304-07, 7311-12). Meyer Tool responds that a raw ticket count obscures differences in cause, severity, cost, customer impact, sign-off responsibility, and disciplinary history. (Doc. 105, PageID 6725). "Exact correlation" is not required, but the significance of those asserted differences depends on contested evidence. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998). It is for a jury to decide whether male machinists were comparable in the *relevant* respects and whether Meyer Tool applied its quality rationale consistently.

Dr. Rebeca Fang's statistical analysis supplies additional circumstantial evidence, although Meyer Tool identifies limitations in its controls for the kind of deviation, disciplinary history, and decisionmaker. (Doc. 112, PageID 7129-38). Those limitations affect weight, the Court may not resolve them against Osie when considering Meyer Tool's motion. See *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466-69 (6th Cir. 1990). Nor does *Santiago* compel judgment on this different record, which includes evidence concerning Broach, Khin, Finn, the final incident, and the asserted replacement. Viewed cumulatively, Osie's procedural, comparator, replacement, and statistical evidence permits, but does not compel, a finding of pretext.

**d. OCRA Gender Discrimination (Count 2)**

Ohio courts generally evaluate sex-discrimination claims under Ohio Revised Code § 4112 using the same evidentiary framework applied to Title VII claims. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *see Vinsant v. WNB Grp. LLC*, No. 25-3228, 2026 U.S. App. LEXIS 503, at *5 n.1 (6th Cir. Jan. 7, 2026). The same competing proof and credibility questions that preclude summary judgment on Count 1 do the same here.

**e. ADA Disability Discrimination (Count 3)**

Under the ADA, a qualified employer may not discriminate against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). A disability in this context is an impairment that substantially limits a major life activity coupled with either a record of such an impairment or an individual being regarded as having such an impairment. 42 U.S.C. § 12102(1). The ADA Amendments Act requires that definition to be construed broadly. 42 U.S.C. § 12102(4)(A).

Osie offers evidence that osteoarthritis and chondromalacia affected her ability to walk and stand, required a boot or crutches, and led her physician to restrict her to eight-hour shifts unless she could remain seated. (Doc. 41, PageID 1939-40, 1943-44, 1950-53; Doc. 120, PageID 7324-26). Meyer Tool emphasizes that the limitations were intermittent, that Osie remained able to perform her job, and that her condition required only limited treatment. Under the "lenient" post-amendment standard, the duration and extent of any such limitations present a factual question on this record. *See Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853-54 (6th Cir. 2018).

The remaining prima facie and pretext questions are also disputed. Meyer Tool approved medical leave and the eight-hour restriction, and it offers the signed traveler, prior discipline, and July 2019 discovery of the duplicate number as evidence of a nondiscriminatory decision. (Doc. 39, PageID 1493-95; Doc. 41, PageID 1951-53, 1982; Doc. 105, PageID 6725). That evidence prevents judgment for Osie. Conversely, Osie offers evidence concerning the timing of her renewed August 2 request and August 6 discharge, Finn's treatment of her medical paperwork, the age and handling of the final error, statistical disparities, and her alleged replacement with Rai. Viewed in Osie's favor, that combination could allow a jury to find that the quality explanation did not actually motivate the decision or was insufficient to do so. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc); *Seeger*, 681 F.3d at 285.

Meyer Tool's challenges to Dr. Fang's controls and to the proposed comparators are proper subjects for cross-examination, not a basis to resolve the competing inferences at summary judgment. The report is not conclusive, but it is part of a broader evidentiary record rather than the sole proof of causation. And, as before, *Santiago* remains persuasive but does not eliminate the factual differences in this case.

Meyer Tool is correct that the record would not permit recovery merely because it failed to provide an accommodation: Osie testified that Meyer Tool approved her leave and implemented the eight-hour restriction. (Doc. 41, PageID 1951-53, 1976-82). But Count 3 also alleges discriminatory discharge, retaliation, and interference

with the exercise of ADA rights. The assertion that Finn allegedly tore up medical documentation and discouraged the process, together with the timing and disputed discharge rationale, creates a triable issue of fact. See 42 U.S.C. § 12203(b). Approval of the request is relevant but does not conclusively resolve whether Osie's protected activity was later used against her.

**f. OCRA Disability Discrimination (Count 4)**

Ohio's disability-discrimination statute is generally construed consistently with the ADA, while applying Ohio's statutory definition of disability. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). The disputed evidence concerning Osie's impairment, the decisionmakers' knowledge, the discharge rationale, and causation likewise precludes judgment for either party on the state claim.

**g. Gender-Based Equal Pay Act Claim (Count 5)**

Under the Equal Pay Act, an employer is prohibited from paying employees of one sex less than employees of the other sex for equal work on jobs requiring equal skill, effort, and responsibility and performed under similar working conditions. 29 U.S.C. § 206(d)(1). A plaintiff must first establish different wages for substantially equal work; job titles alone do not control, and the inquiry focuses on actual requirements and performance. *Briggs*, 11 F.4th at 507-08; *Beck-Wilson v. Pincipi*, 441 F.3d 353, 359-60 (6th Cir. 2006). Only then must an employer prove that the difference in pay resulted from seniority, merit, production, or another permissible factor. 29 U.S.C. § 206(d)(1).

The evidence concerning equal work and pay is conflicting. Osie offers testimony that machinists received common training, shared starting classifications, and could be moved among operations; that Broach performed EDM, marking, deburring, and washing; and that Blake Ooten was the other night-shift parts marker, had less seniority, and earned more. (Doc. 41, PageID 1988-90; Doc. 120, PageID 7335-36). Dr. Fang also found statistically significant average pay and raise differences between male and female machinists. (Doc. 112, PageID 7127-30). This evidence, if credited, could establish unequal pay for substantially equal actual work.

Meyer Tool offers contrary evidence that the machinist title covered materially different machines and operations, that marking required fewer skills and responsibilities, that Osie's personal knowledge of Ooten's pay was limited, and that Meyer's compensation scheme reflected a merit-based evaluation system. (Doc. 41, PageID 1804, 1990; Doc. 110, PageID 7081-83). Those asserted differences could defeat the prima facie case or support an affirmative defense, but the Court cannot weigh them against Osie's contrary proof. *See Beck-Wilson*, 441 F.3d at 359-60. Neither side has established the actual equality or inequality of the work and the reason for any wage difference as a matter of law.

**h. Gender-Based Ohio Equal Pay Act Claim (Count 7)**

Ohio Revised Code § 4111.17(A) likewise prohibits sex-based wage differentials for equal work on jobs requiring equal skill, effort, and responsibility under similar conditions, and courts analyze the state and federal claims under the same standards. *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 161 n.6 (6th Cir. 2004). Thus, the

same disputes concerning actual duties, wages, and the asserted merit system preclude judgment for either party on this count.

**i. FMLA Interference and Retaliation (Count 8)**

Under the FMLA, it is unlawful for an employer to interfere with an employee's exercise of FMLA rights or to retaliate against an employee for exercising them. 29 U.S.C. § 2615(a). Interference not only includes outright refusal of leave, but also discouraging its use or treating usage of leave as an adverse factor in an employment-related decision. 29 C.F.R. § 825.220(b)-(c); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 402-03 (6th Cir. 2003). Meyer Tool may prevail by showing that it would have made the same decisions regardless of leave. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006). Retaliation based on circumstantial evidence follows the *McDonnell Douglas* framework. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761-62 (6th Cir. 2012).

Meyer Tool approved each leave request identified in the record, including Osie's April 2019 leave, supplemental leave, and the continued eight-hour restriction (approved on August 2, 2019). Osie admitted that Meyer Tool did not formally deny leave. (Doc. 41, PageID 1911-13, 1937-39, 1951-53, 1982). Meyer Tool also offers evidence that the final quality error was discovered in July, before the August request, and that the discharge rested on that error and prior discipline. A reasonable jury could accept that evidence.

But formal approval does not resolve Osie's pleaded interference and retaliation theories. Osie testifies that Finn tore up medical documentation in front

of her, requiring it to be sent directly to HR, and otherwise discouraged her use of protected leave. (Doc. 107, PageID 6856; Doc. 120, PageID 7339). Meyer Tool discharged Osie on August 6, four days after the renewed request, based in part on a marking event that had occurred nearly two years earlier and was documented differently from other quality events. That temporal proximity, combined with the disputed investigation, comparator evidence, and progressive discipline, could support an inference that taking leave was viewed negatively by Meyer Tool.

Dr. Fang's conclusion that machinists who used FMLA leave were more likely to be involuntarily terminated in 2018 and 2019 provides additional, though disputed, context. (Doc. 112, PageID 7130-31). Meyer Tool challenges the report's controls and points to its repeated approvals. Those are substantial counterarguments, but resolving their relative force would require weighing evidence. On this record, a jury could credit either Meyer Tool's independent quality explanation or Osie's evidence of discouragement and retaliatory timing.

**j. Negligent Retention and Supervision (Count 9)**

Ohio courts generally evaluate a negligent-retention or supervision claim by asking whether (1) an employment relationship existed; (2) the employee was incompetent; (3) the employer actually or constructively knew of that incompetence; (4) the employee committed an act or omission causing injury; and (5) the employer's negligence proximately caused the injury complained of. See *Evans v. Akron Gen. Med. Ctr.*, 170 N.E.3d 1, 3 (Ohio 2020). Although the employee need not first be

adjudged liable in a separate action, the plaintiff must prove legally wrongful conduct by the employee and the employer's own negligence. *Id.* at 4-5.

Meyer Tool argues that Title VII and Chapter 4112 preempt Count 9 and that Osie forfeited the issue by failing to answer that argument. The Court is not persuaded. Osie's opposition treats the claim as one for Meyer Tool's breach of an independent duty, relies on *Evans*, and argues that Finn's alleged conduct was legally wrongful. (Doc. 120, PageID 7340-41). That sufficiently joined the issue. Ohio also recognizes that an employer may be directly liable for failing to take corrective action when it knows or should know of an employee's sexual harassment. *Kerans v. Porter Paint Co.*, 575 N.E.2d 428, 432 (1991); *see also Mullins v. Goodyear Tire & Rubber Co.*, 291 F.App'x 744, 748 (6th Cir. 2008). Although Osie must still prove Meyer Tool's own negligent breach and legally wrongful conduct by Finn, Count 9 is not categorically displaced here.

Osie alleges that Meyer Tool knew Finn harassed women and black employees, but nevertheless retained and failed to supervise him. Her evidence includes descriptions by Broach, Khin, Rebecca Santiago, and William Cannon-El of discriminatory remarks, hostility, relationships with subordinates, and inconsistent discipline, along with evidence that Finn's conduct was known in the workplace. If credited, that evidence could permit a jury to find incompetence, actual or constructive notice, and legally wrongful discriminatory or retaliatory conduct that contributed to Osie's injury.

Meyer Tool offers evidence that Osie never complained to HR about Finn, that much of the testimony is generalized or contested, that Finn did not make the final termination decision alone, and that the discharge had a lawful basis. (Doc. 41, PageID 1992; Doc. 110, PageID 7058-63). That evidence could defeat notice, underlying wrongfulness, or causation and therefore prevents judgment for Osie. But because the competing accounts turn on credibility and Finn's actual role, summary judgment is not appropriate.

**k. Title VII Retaliation (Count 10)**

Under Title VII, an employer is barred from discriminating against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). In *Thompson v. North American Stainless, LP*, the Supreme Court held that Title VII may protect an employee from retaliation based on another's protected activity when injuring the employee could dissuade that other person from engaging in protected activity. 562 U.S. 170, 175 (2011). The Court declined to identify a fixed class of relationships covered by that rule. *Id.*

Count 10 alleges that Meyer Tool retaliated against Osie because of her close relationships with Santiago and Cannon-El, who filed administrative charges and pursued litigation against Meyer Tool. (Doc. 1, PageID 22). As the Court explained above, the retaliation allegations in Osie's charge were sufficient to lead a reasonable investigation into Finn's motive for targeting her, including his reaction to those relationships. The issue is therefore exhausted.

The merits present competing inferences. Osie describes Cannon-El as her best friend of more than twenty years and offers evidence that Finn said he "had it out" for Cannon-El and his friends, accused Osie of taking paperwork to Cannon-El, objected when Cannon-El picked her up, and then participated in discipline that culminated in discharge. (Doc. 107, PageID 6853-55; Doc. 120, PageID 7342-43). Combined with the disputed quality rationale, that evidence could support causation and pretext. The August 6 discharge is itself a timely adverse action; the earlier disciplinary events may be considered as background and as part of the asserted progressive chain. Meyer Tool counters that friendship alone is not protected activity, the earlier proceedings were remote in time, and Adams and Lang relied on documented quality concerns. A jury could accept that account as well, but the relationship's significance, Finn's knowledge and influence, and the actual motive for the discharge cannot be resolved on summary judgment based on the record before the Court.

**l. Motion for Discovery-Related Costs and Fees**

Finally, Osie moves for reimbursement of $1,679.69 paid to copy and scan 4,842 pages of discovery and $1,500 in attorney fees. (Doc. 128, PageID 7690-91, 7696). She invokes Rule 26(c) and former Rule 37(a)(4)(A), contending that Meyer Tool unnecessarily produced paper records that could have been generated electronically. Meyer Tool responds that the responsive documents were maintained in paper personnel files, that it offered inspection, and that Osie elected and authorized the files to be copied by a vendor. (Doc. 130, PageID 7741-48).

Ordinarily, a responding party bears the expense of complying with discovery during litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). A court may allocate discovery expenses, Fed. R. Civ. P. 26(c)(1)(B), and every signed discovery response or objection certifies after reasonable inquiry that it is neither interposed for an improper purpose nor unreasonable or unduly burdensome, Fed. R. Civ. P. 26(g)(1)(B)(ii)-(iii). If that certification is violated without substantial justification, the Court must impose an appropriate sanction, which may include the reasonable expenses and attorney fees caused by the violation. Fed. R. Civ. P. 26(g)(3). Rule 34's option to produce documents as kept in the usual course of business does not itself authorize a responding party to condition production on the requesting party's prepayment without seeking a protective order or expense allocation. See Fed. R. Civ. P. 34(b)(2)(B), (E)(i)-(ii).

Here, Meyer Tool reviewed thirteen boxes, selected 4,842 responsive pages, and told Osie that she must either send counsel on an approximately eight-hour round trip to inspect them or prepay the outside vendor's copying cost. (Doc. 128, PageID 7706-08, 7712). Osie authorized the copying only after Meyer Tool represented that payment was required to obtain the production. Meyer Tool then required reimbursement of the $1,679.69 invoice before releasing the documents, marked and Bates-numbered the copies, and transmitted the production electronically. (*Id.*, PageID 7705-06).

The Court expressly warned counsel during the discovery conference that, if the documents could have been produced electronically, the copying costs would be

shifted back to Meyer Tool. The developed record shows that Meyer Tool's HR, payroll, attendance, quality, and training information was maintained in searchable computer systems capable of generating or reproducing responsive employee information, and Meyer Tool ultimately delivered the selected production electronically. (Doc. 131, PageID 7751-57). Some source material may also have existed in paper personnel files, but that did not entitle Meyer Tool to impose its chosen production expense unilaterally. Meyer Tool did not move for a protective order, demonstrate that the requested format was inaccessible, or obtain advance cost allocation from the Court.

On these facts, Meyer Tool's insistence that Osie pay the vendor charge—despite the governing presumption and the Court's express warning—was objectively unreasonable and lacked substantial justification. Its subsequent electronic delivery confirms that the compelled copying expense did not provide Osie a distinct production benefit. The conduct violated Rule 26(g)'s certification standard and was at least tantamount to bad faith for purposes of the Court's inherent authority to enforce its discovery directives. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46, 50 (1991); *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). The parties' full briefing supplied notice and an opportunity to be heard; further briefing is therefore unnecessary. The Court therefore orders Meyer Tool to reimburse Osie $1,679.69.

Counsel Mark Owens attests that he spent 5.26 hours reviewing the discovery record and correspondence and preparing and filing the motion, at a rate of $285 per hour. (Doc. 128-7, PageID 7713-14). Meyer Tool does not meaningfully challenge the

rate, time, or causal connection, and the requested $1,500 fee is reasonable and proportionate to the violation.

## IV. CONCLUSION

For the foregoing reasons, the motions for summary judgment, (Docs. 106, 110), are **DENIED**. Further, Osie's motion to strike Nancy Condon, (Doc. 90), is **GRANTED**; Meyer Tool's motion to strike the Broach and Khin affidavits, (Doc. 117), is **DENIED**; and Osie's motion for reimbursement and fees, (Doc. 128), is **GRANTED**. Meyer Tool shall remit to Osie's counsel $3,179.69 within thirty (30) days of this order.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge